UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No.: 2:23-CR-108 |
| LINOSHKA BARBOSA, | ) | |
| a.k.a. "Lily," a.k.a. "Lilz," | ) | |
| Defendant | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Between March 2020 and October 2023, Linoshka Barbosa, a.k.a. "Lily," a.k.a. "Lilz," was one of the leaders of a drug conspiracy in the Brattleboro, Vermont area, involving large quantities of cocaine, cocaine base and fentanyl, and numerous firearms. This memorandum describes her conduct and requests the Court impose a sentence consistent with the seriousness of her conduct as reflected by the Guidelines calculation and, in any event, not less than 144 months.

## I.    FACTS

Around the start of COVID (March 2020), Linoshka Barbosa and Jeremy White, both from Hartford, Connecticut, started to come to the Brattleboro area of Vermont to sell drugs. Initially, Barbosa was travelling to Vermont by bus. However, in approximately 2021, Barbosa and White began to pay an Uber driver named Michael Deming to bring them to and from Vermont. The Vermont drug operation was run by Barbosa; the Hartford end of the operation run by Jeremy White. Over time, Barbosa and White enlisted other people from Hartford to come to Vermont to help them sell drugs, namely, Nathan Delgado a.k.a. "Black," Jason White a.k.a. "Baby J" and "Jay," Elias Lopez a.k.a. "Louis" and "Joey," Angel Cruz a.k.a. "A" (Barbosa's boyfriend) and Jayden Rios a.k.a. "X" (hereinafter the Hartford distributors).

The Hartford distributors were all members of a violent gang called "GMS," which stands for "Get Money Steppas." Several members of this gang have been involved in armed robberies, shootings, and homicides in Hartford, and several of them have current charges pending for these crimes. The Hartford group had numerous suppliers including Gina Colon a.k.a. "Chunga" (Angel Cruz's mother) and Leonard White Sr. (Jeremy White's father). Zoquia Barbosa, Linoshka Barbosa's mother, was also involved in securing product for the group and would assist Barbosa in maintaining and laundering the drug proceeds.

The coconspirators operated by using several different locations in Brattleboro from which to sell their drugs. The main location was 33 Oak Street #4, which was the residence of the Neilena Bollman. Barbosa sold drugs out of Bollman's residence longer than she did at any other location and the quantity of drugs sold from that location was considerable. Other locations included: 84 Linden Street (the address of an August 2023 search warrant which led to federal charges against Elias Lopez, Michael White, William Roy and Addyson Morgan), 14 Birge Street (the location of a March 30, 2023 homicide involving Elias Lopez), and 135 Elliot Street. The group operated by employing one or two individuals from the Brattleboro area to "work the door." The person working the door would answer the door to a prospective drug customer, determine what they wanted to purchase, and then pass that information on to the Hartford distributor. The person would then get the drugs from the Hartford distributor and provide those drugs to the customer in exchange for money. Local distributors for Barbosa included: Steven Holway, Addyson Morgan, William Roy and Michael White.

In the fall of 2022, ATF agents in Hartford initiated a trace request for a Glock 9mm pistol. It was determined that the firearm had been purchased in July 2022 by a person in Hinsdale, New Hampshire. In November 2022, another trace request was conducted after another Glock 9mm had

been recovered at the scene of a homicide in Hartford. The trace for that firearm came back to a second person in the Hinsdale area, and this person was the boyfriend of the first person.

On November 16, 2022, ATF investigators interviewed the Hinsdale purchasers about the Glocks and those interviews revealed that a person by the name of "Lily" or "Lilz" a.k.a. Linoshka Barbosa, was selling drugs in Brattleboro and enlisting drug users to buy guns for her. Barbosa would give the user cash to pay for the guns and once the user returned to her with the guns, Barbosa would also give them drugs.

This information touched off the drug and firearm investigation that followed. In 2023, law enforcement conducted 17 controlled buys into members of the group, including controlled buys directly into Barbosa, Delgado, Jason White, Holway, Elias Lopez, William Roy, and Addyson Morgan. Law enforcement also conducted search warrants, and recovered drugs and firearms, from 33 Oak Street #4, 14 Birge Street and 84 Linden Street. Unfortunately, these searches did nothing to deter the drug trafficking activities—the coconspirators simply left the residence that had been searched and they moved onto another residence. For example, on March 9, 2023, law enforcement searched 33 Oak Street #4 and recovered crack cocaine, fentanyl, cash and a Glock 9mm pistol. Numerous people were inside the house at the time of the search, including, Neilana Bollman, Elias Lopez and Jayden Rios. Despite that search and the recovery of drugs and a firearm, the group moved onto 14 Birge Street. Three weeks later, while Elias Lopez, Jayden Rios, Neilena Bollman and others were still at 14 Birge Street, Lopez shot and a killed a person during a failed drug robbery. After the homicide, the group (with the exception of Bollman, who left the conspiracy after the homicide) moved locations again and ultimately ended up at 84 Linden Street. During an August 2023 search warrant at 84 Linden Street, Lopez, Rios, William Roy, Addyson

Morgan and Michael White were all at the house and investigators again recovered cash, crack cocaine, over 100 rounds of various ammunition and a Glock 9mm pistol.

In addition to the large quantity of drugs sold by Barbosa and her distributors, Barbosa and her crew regularly possessed and traded drugs for guns. Guns were an integral part of the drug conspiracy and many of the guns found in, and/or purchased in, Vermont were later connected to shootings in Hartford. For example, in the early morning hours of August 11, 2023, there was a fatal shooting on a street corner in Hartford. Over one hundred rounds were expelled during the shooting and two men died. Some of the casings were submitted to the National Integrated Ballistics Information Network (NIBIN) and it was determined that one of the firearms used in the shooting was also used in the Birge Street homicide on March 30, 2023 involving Elias Lopez. In addition, on August 17, 2023, investigators recovered a Glock 9mm during the search of 84 Linden Street. Investigation revealed that it had originally been purchased in 2022 by one of Hinsdale purchasers who later traded the gun to Barbosa. NIBIN then determined that the Linden Street gun had been used in three other "shots fired" shootings in Hartford, all of which occurred between July 2022 and August 2023.

The defendant, Linoshka Barbosa, was at the center of all these activities in Vermont. While Barbosa did return to Hartford for periods of time during the conspiracy, the evidence case, including the statements of witnesses, indicate that it was Barbosa, not anyone else, who led the drug conspiracy in Vermont.

I.    **CHARGES, PLEA AND PSR**

Barbosa was initially charged in a two-count indictment with conspiracy to distribute fentanyl and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 941(c)(1)(A). These charges carried a mandatory minimum penalty of 10 years in prison. On October 15, 2024, Barbosa pleaded guilty pursuant to an information charging a non-mandatory minimum drug conspiracy under 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and the mandatory minimum firearm charge under 924(c)(1)(A). Barbosa has been detained throughout these proceedings.

The PSR for Barbosa calculates the base offense level as 36 (30,000-90,000 CDW), and after +4 for role in the offense and -3 for acceptance, the PSR's total offense level is 37. In the plea agreement, the government agreed not to oppose a variance from the guideline range to treat cocaine base as powder cocaine. Therefore, if the same quantity were calculated using powder cocaine, the base offense level would be 34 and after the four-level enhancement and acceptance, the total offense level would be 35. In criminal history category I, Barbosa's PSR guideline imprisonment range on the drug conspiracy charge would be 168-210 months. After adding 60 months for the 924(c) charge, her total guideline imprisonment range would be 228-270 months.

The government does not have any objections to the PSR and the Court is urged to adopt the PSR for the purpose of sentencing. The defendant objects to the four-level aggravating role enhancement and the PSR's drug quantity calculation. Regarding the role enhancement, the defendant's objection appears to be that because she was not an "organizer" or "primary supplier" for the conspiracy, the enhancement does not apply. This is not legally correct and it ignores the evidence in the PSR describing Barbosa as a leader in the conspiracy.

U.S.S.G. § 3B1.1(a) states that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the guideline level is to be increased by four levels. This means that in addition to "organizers," leaders of criminal activity which involve five or more participants are also subject to the enhancement. The

conspiracy in this case involved well over five participants and there is no argument to the contrary. The issue then becomes whether Barbosa was a leader or one of the "leaders" of the conspiracy. *See* U.S.S.G. § 3B1.1(a), comment. (n.4) ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."). The facts in the PSR fully support a finding that Barbosa led the Vermont end of the conspiracy. *See, e.g.*, PSR ¶¶ 57, 71, 78, 80. In addition, at the sentencing hearing, the government anticipates eliciting testimony from witnesses who will indicate that Barbosa was the leader of the conspiracy in Vermont. This evidence will confirm the PSR's four-level enhancement for role was properly applied.

The drug quantity as calculated by the PSR is also correct. Barbosa complains that the drug quantity is "based entirely on the statements of Neilena Bollman," Def. Sent. Memo at 4, and that the PSR erroneously characterizes Barbosa's presence in Vermont as continuous from March 2020 to October 2023. This claim lacks merit. While it is true that the drug quantity is calculated based on Bollman's statements, *see* PSR ¶¶ 83-85, the PSR itself is replete with evidence of quantity. *See, e.g.,* PSR ¶¶ 22-40 (describing 17 controlled purchases involving the coconspirators); PSR ¶ 41 (describing drugs seized during 33 Oak Street search); PSR ¶ 46 (describing drug seized during 84 Linden search); PSR ¶ 47 (describing drugs seized during 125 Barker Street search); PSR ¶ 48 (describing drugs seized during 512 Wilbraham Road search); PSR ¶ 51 (describing drugs seized during search of Deming's car); PSR ¶ 59 (describing drugs seized during search of Barbosa's residence); PSR ¶ 70 (Steven Holway's statements about quantity); PSR ¶¶ 76-77 (Addyson Morgan's statements about quantity); PSR ¶ 80 (Michael Deming's statements about bringing Barbosa to Vermont starting in 2021).

It is well settled that a crucial component of witness credibility is whether a witness's statements are corroborated by other evidence. Here, the evidence of quantity throughout the PSR

fully corroborates Bollman's statements. This, by itself, is enough to establish the drug quantity in the PSR by a preponderance. However, Barbosa herself, in her post-arrest interview also described that in each trip that Michael Deming made to Vermont, the drug quantity would vary from one to seven ounces of crack cocaine and two to five boxes of fentanyl, with each box containing 500 bags of fentanyl. Gov't Exhibit 1 ¶ 43 (filed under seal). If drug quantity were calculated using only the timeframe of Deming's involvement between August 1, 2021 and June 1, 2023 (rather than the entire conspiracy between March 1, 2020 and October 2023), and an average of the drugs Barbosa admitted to bringing to Vermont, the base offense level would still be 32.[1] And, if these same amounts were used in a calculation for the entire conspiracy, the base offense level would be 34[2]—the same offense level found by the PSR.

The quantity in this case is high, due in part to the length of the conspiracy (which Barbosa had admitted to). But it is also true that the coconspirators were simply selling huge amounts of drugs. One witness, Steven Holway, indicated that on a slow day, there would be 100 customers and on a busy day, it would be around 1000. This number seems shocking. However, Barobsa herself confirmed that there were sometimes *twenty people an hour* walking into Oak Street to buy drugs (emphasis added). Gov't Exhibit 1 ¶ 27.

The drug quantity calculation in the PSR is corroborated numerous ways by the evidence in this case and Barbosa's objection to the contrary lacks merit. To the extent the Court has

---

[1] Assuming one trip per week for 95 weeks with 2.5 boxes of fentanyl (or 1250 bags, which equals 26 grams) and 3.5 ounces of powder cocaine (or 98 grams), the quantity totals 9310 grams of powder cocaine and 2470 grams of fentanyl, for a converted drug weight of 8,037 KG.

[2] Assuming one trip per week for 187 weeks with 2.5 boxes of fentanyl (or 1250 bags, which equals 26 grams) and 3.5 ounces of powder cocaine (or 98 grams), the quantity totals 18,326 grams of powder cocaine and 4,862 grams of fentanyl, for a converted drug weight of 15,820 KG.

remaining concerns about the quantity calculation, the government intends to support the PSR's findings with testimony from witnesses at the sentencing hearing.

## II.     SENTENCING RECOMMENDATION

Considering the factors found at 18 U.S.C. § 3553(a), the government urges the Court to impose a sentence of not less than 144 months. The nature and circumstance of the offense, along with the seriousness of the offense, all support the requested sentence. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). This drug conspiracy, led by Barbosa in Vermont, literally took over Brattleboro for over three years. During this time, numerous firearms were trafficked to Hartford and used in gang violence, and one person in Vermont was killed during a drug dispute. Barbosa's involvement in the conspiracy was extensive, as demonstrated by her own post-arrest statement. *See* Gov't Exhibit 1. She also was violent and she assaulted Bollman during a drug dispute.  PSR ¶ 57.

It is impossible to calculate the harm caused to the Brattleboro community or the number of lives affected by this crime, and it is unfortunately not likely that Brattleboro will recover anytime soon. Barbosa, with her leadership role, was in the center of this conduct and she is directly responsible for that harm.  Her sentence should therefore be significant and reflect that fact.

Barbosa has relatively little criminal history and this partially inures in her favor. *See* 18 U.S.C. § 3553(a)(1). However, the one conviction she does have is for a drug offense in Hartford that occurred before the start of the conspiracy in this case. *See* PSR ¶ 103.  Barbosa was arrested for that offense in February 2020 and in March 2023 she received a suspended sentence with two years of probation. PSR ¶ 103. While that charge was pending, in August 2022, Barbosa was arrested against for illegal possession of a weapon (felony) and a registration offense. PSR ¶ 106. The charge was nolle prossed. This history indicates that while Barbosa was committing her crime in Vermont, she had pending charges in Hartford. It also shows that the Hartford charges did

nothing deter her conduct and even after she was put on probation for the drug offense, she continued to deal drugs in Vermont.  While Barbosa's overall criminal history is not extensive, her willingness to commit crime while on release and/or probation is a factor this Court should consider in imposing sentence.

Regarding Barbosa's claims that she had a drug addiction to fentanyl during the crime, there is no evidence (aside from Barbosa's own self-serving statement) to indicate that her crime was motivated by addiction. Barbosa lived on and off in Vermont for years, and none of the witnesses confirm her account that she was using, or addicted to, fentanyl. There is also no indication of this use in the PSR, s*ee* PSR ¶ 120-128, and Barbosa did not disclose any drug use (pills or fentanyl) to law enforcement at the time of her arrest. *See* Gov't Exhibit 1. Motivation to commit a crime is a factor considered by this Court in balancing the 3553(a) factors. However, this crime and Barbosa's involvement in it was not motived by drug use. It was motived by greed and a desire to be involved in the gang lifestyle.

Finally, the requested sentence should reflect Barbosa's relative culpability in the offense, specifically as it relates to the conduct of, and the sentences for, the other defendants.[3] *See* 18 U.S.C. § 3553(a)(6) (citing the need to avoid unwarranted sentencing disparities). Barbosa alone led the Vermont end of the drug conspiracy. Other distributors from Hartford such as Nathan Delgado and Jason White were placed in Vermont to assist, but they were in Vermont for a short period of time and they did not control the operation to the same extent as Barbosa. Barbosa was also the only person in this conspiracy who initially faced a mandatory minimum drug charge and

---

[3]  Three people have been sentenced in this case thus far: William Roy, a Vermont distributor for Barbosa, was sentenced to 60 months; Nathan Delgado and Jason White, both Hartford distributors who possessed firearms, were each sentenced to 60 months.

a mandatory minimum firearm charge, and even though she ultimately pleaded guilty to a non-mandatory drug charge and the mandatory minimum firearm charge, her guidelines are over four times higher than the guidelines for either Delgado or Jason White.[4] Barbosa is not similarly situated to either Delgado and Jason White, and her sentence should be far higher than the ones they received. Barbosa, along with Jeremy White, ran this conspiracy and their sentences should reflect that fact.

## III.    CONCLUSION

Based on the foregoing, in addition to the testimony that will be elicited at the sentencing hearing, the government urges the Court to impose an overall sentence of not less than 144 months, to be followed by four years of supervised release, and a $100 special assessment. This sentence would promote respect for the law, provide for just punishment, and send a deterrent message to those in Hartford seeking to come to Vermont to sell drugs and acquire firearms. *See* 18 U.S.C. §§ 3553(a)(2)(A), (B).

Dated at Burlington, Vermont, this 15th day of May 2025.

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney

By:    */s/ Wendy L. Fuller*
WENDY L. FULLER
Assistant U.S. Attorney

---

[4] Barbosa claims in her memorandum that Delgado and White were each sentenced to 60 months despite the fact that "neither faced gun charges requiring a mandatory minimum or consecutive sentences." Def. Sent. Memo. at 24. This is inaccurate. Both Delgado and Jason White pleaded guilty to a mandatory minimum firearms charge under 18 U.S.C. § 924(c) and both received the mandatory minimum sentence of 60 months.